UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

FILED

01 MAR 30 PM 4:30

H.D OF ALABAMA

KIMBERLY RODGERS; TERRIE GAMMON; )
and PATRICIA ROBERTSON, )
)
     Plaintiffs, )
)
vs. )     Civil Action No.CV00-S-3264-NE
)
GEORGE C. WALLACE STATE COLLEGE,)
)
     Defendant. )

ENTERED

3 0 2001

MEMORANDUM OPINION REGARDING
PLAINTIFFS' PUTATIVE CLASS CLAIMS UNDER
THE FAIR LABOR STANDARD ACT CLAIMS OF 1938

The court has reviewed the complaint filed in this action, in which plaintiffs assert gender-based wage disparity claims in violation of both Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.*, and, the Equal Pay Act, 29 U.S.C. § 206(d), which was added in 1963 to the Fair Labor Standards Act of 1938, 29 U.S.C. § 201 *et seq.*[1] Plaintiffs assert such claims not only individually, but also "on behalf of all others similarly-situated, pursuant to Rule 23, *et seq.*, of the *Federal Rules of Civil Procedure.*"[2]

The class which the plaintiffs seek to represent is composed of all female employees, teachers,

---

[1]The Equal Pay Act of 1963 proscribes gender-based wage discrimination among employees. Unlike Title VII, the Equal Pay Act does not prohibit discrimination in hiring, firing, or promoting employees. Moreover, it does not apply to pay differentials in jobs that are not equal. Instead, "it stands for the straightforward proposition that 'employees doing equal work should be paid equal wages, regardless of sex.'" Goodrich v. International Brotherhood of Electrical Workers, 815 F.2d 1519, 1523 (D.C. Cir. 1987) (*quoting* H.R. Rep. No. 309, 88th Cong., 1st Sess. 2 (1963)).

[2]Complaint ¶ 7, at 2.

professionals, former teachers, as well as discouraged female applicants for such positions, who would have applied for these positions absent the discrimination alleged herein.  There are common questions of law and fact affecting the rights of the members of the class who were discriminated against because of their sex, and these persons are so numerous that joinder of all members is impracticable, so that a common relief is sought.  The interests of said class is adequately represented by the plaintiffs.  The defendant has acted or refused to act on grounds generally applicable to the class.[3]

If plaintiffs' claims were founded only upon Title VII, there would be no need for the present memorandum opinion:  such class claims routinely are pursued in accordance with Rule 23 of the Federal Rules of Civil Procedure.  The rub in the present action lies in the fact that "class" litigation is significantly limited under the Fair Labor Standards Act of 1938 ("FLSA"), even as amended by the Equal Pay Act of 1963.

Section 16(b) of the FLSA (now codified as 29 U.S.C. § 216(b)) unquestionably allows "one or more employees" to file suit not only "for and in behalf of himself or themselves," but also on behalf of "other employees similarly situated."  Nevertheless, the statute contains important qualifying language:

Any employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid minimum wages, or their unpaid overtime compensation, as the case may be, and in an additional equal amount as liquidated damages.  Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief

---

[3]*Id.* at 2-3.

as may be appropriate to effectuate the purposes of
section 215(a)(3) of this title, including without
limitation employment, reinstatement, promotion, and the
payment of wages lost and an additional equal amount as
liquidated damages.  An action to recover the liability
prescribed in either of the preceding sentences may be
maintained against any employer (including a public
agency) in any Federal or State court of competent
jurisdiction by one or more employees for and in behalf
of himself or themselves and other employees similarly
situated.  <u>No employee shall be a party plaintiff to any
such action unless he gives his consent in writing to
become such a party and such consent is filed in the
court in which such action is brought</u>.  ...

29 U.S.C. § 216(b) (emphasis supplied).[4]  Thus, plaintiffs

proceeding under § 216(b) must affirmatively "opt-in" the action,

by filing a written consent in the court where the FLSA action is

brought.   Until the individual "opts in," he or she is not

considered part of the collective action, and, is not bound by the

court's ultimate judgment or decision.   In stark contrast, Title

VII plaintiffs in a case that is certified as a class action in

accordance with the requirements of Rules 23(a), (b), and (c)(1) of

the Federal Rules of Civil Procedure must affirmatively "opt-out"

of the certified class; otherwise, they are deemed part of the

---

[4]The emphasized sentence was added to § 216(b) by Section 5 of the Portal-
to-Portal Act of 1947, Pub.L. No. 80-49, ch. 52, § 5(a), 61 Stat. 84, 87 (1947).
*See* United States v. Cook, 795 F.2d 987, 990 (Federal Cir. 1986); *see also* Dolan
v. Project Construction Corp., 725 F.2d 1263, 1266-67 (10th Cir. 1984)
(discussing legislative history of the Portal-to-Portal Act, and observing that
"[t]he opt-in language of § 216(b) was a direct result of ... clear congressional
dissatisfaction with the original class action provisions of the FLSA.  In fact,
the relevant language of § 216(b) was entitled 'Representative Actions Banned'
in the Portal-to-Portal Act.").

action, and, are bound by any decision entered in the case.[5]  *See,
e.g., Whalen v. W.R. Grace & Co.*, 56 F.3d 504, 506 n.3 (3rd Cir.
1995); *Dolan v. Project Construction Corp.*, 725 F.2d 1263, 1266
(10th Cir. 1984) (citing *Price v. Maryland Casualty Co.*, 561 F.2d
609 (5th Cir. 1977); *LaChapelle v. Owens Illinois, Inc.*, 513 F.2d
286 (5th Cir. 1975)[6]).

> There is a fundamental, irreconcilable difference
> between the class action described by Rule 23 and that
> provided for by FLSA § 16(b).  In a Rule 23 proceeding a
> class is described; if the action is maintainable as a
> class action, each person within the description is
> considered to be a class member and, as such, is bound by
> judgment, whether favorable or unfavorable, unless he has
> "opted out" of the suit.  Under § 16(b) of FLSA, on the
> other hand, no person can become a party plaintiff and no
> person will be bound by or may benefit from judgment
> unless he has affirmatively "opted into" the class; that
> is, given his written, filed consent. ... <u>It is crystal
> clear that § 16(b) precludes pure Rule 23 class actions
> in FLSA suits</u>.

*LaChapelle*, 513 F.2d at 288 (emphasis supplied); *see also Grayson
v. K Mart Corporation*, 79 F.3d 1086, 1096 n.12 (11th Cir. 1996)

---

[5]Rule 23(c)(2) of the Federal Rules of Civil Procedure provides:

> (2)  In any class action maintained under subdivision (b)(3),
> the court shall direct to the members of the class the best notice
> practicable under the circumstances, including individual notice to
> all members who can be identified through reasonable effort.  The
> notice shall advise each member that (A) the court will exclude the
> member from the class if the member so requests by a specified date;
> (B) the judgment, whether favorable or not, will include all members
> who do not request exclusion; and (C) any member who does not
> request exclusion may, if the member desires, enter an appearance
> through counsel.

[6] In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981) (*en
banc*), the Eleventh Circuit adopted as binding precedent all Fifth Circuit
decisions handed down prior to the close of business on September 30, 1981.

("[I]t is clear that the requirements for pursuing a [FLSA] class action are independent of, and unrelated to, the requirements for class actions under Rule 23 of the Federal Rules of Civil Procedure.").

Further, unlike Rule 23, § 216(b) of the FLSA provides little guidance as to how such collective actions should be conducted. Section 216(b) neither requires parties to obtain judicial oversight before seeking to locate "similarly situated" individuals, nor forbids them from seeking such judicial involvement. Nonetheless, it is well settled that district courts possess both the inherent power and responsibility to supervise and facilitate such notice to potential plaintiffs. *See, e.g., Hoffmann-La Roche Inc., v. Sperling*, 493 U.S. 165, 169, 110 S.Ct. 482, 486, 107 L.Ed.2d 480 (1989). Indeed, once an FLSA action is filed, "the court has a managerial responsibility to oversee the joinder of additional parties to assure that the task is accomplished in an efficient and proper way." *Id.* at 170-71, 110 S.Ct. at 486. Moreover, "[t]he interest of courts in managing collective actions in an orderly fashion is reinforced by Rule 16(b), requiring entry of a scheduling order limiting time for various pretrial steps...." *Id.* at 173, 110 S.Ct. at 487.

The Eleventh Circuit addressed the proper class certification procedure for collective actions founded upon § 216(b) in *Dybach v.*

*State of Florida Department of Corrections*, 942 F.2d 1562 (11th Cir. 1991), saying:

> [T]he district court is deemed to have the power to give such notice to other potential members of the plaintiff class to "opt-in" if they so desire and by the district court's exercise of that power under appropriate conditions. Before determining to exercise such power on application by Dybach upon remand of this case, the district court should satisfy itself that there are other employees of the department-employer who desire to "opt-in" and who are "similarly situated" with respect to their job requirements and with regard to their pay provisions. <u>If the district concludes that there are such other employees, we leave it to the district court to establish the specific procedures to be followed with respect to such possible "opting-in."</u>

*Id.* at 1567-68 (emphasis supplied). The Eleventh Circuit later held that a requirement for plaintiffs to demonstrate that other persons are "similarly situated" is not burdensome. "Plaintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Grayson*, 79 F.3d at 1096 (internal quotation marks omitted).

District courts within the Eleventh Circuit accordingly have utilized a two stage process to "certify" FLSA § 216(b) class actions. *See Harper v. Lovett's Buffet, Inc.*, 185 F.R.D. 358, 361 (M.D. Ala. 1999); *Brooks v. BellSouth Telecommunications, Inc.*, 164 F.R.D. 561, 565 (N.D. Ala. 1995);[7] *Garner v. G.D. Searle*

___

[7]The plaintiff's claims in *Brooks* were founded upon the Age Discrimination in Employment Act of 1967 ("ADEA"). Even so,
> [c]lass actions under the ADEA do not ... proceed under Fed.R.Civ.P. 23. The ADEA explicitly incorporates section 16(b) of the Fair Labor Standards Act, 29 U.S.C. § 216(b) which provides the

*Pharmaceuticals & Company*, 802 F. Supp. 418, 422 (M.D. Ala. 1991).

First, during the "notice stage," the court examines the pleadings, affidavits, and other proofs offered by the parties, and makes a preliminary determination of whether other individuals are "similarly situated." If so, the court may conditionally certify a class, and putative class members may be given notice and the opportunity to "opt-in." During this first stage, the court clearly may permit discovery of the names and addresses of other potential plaintiffs. *See Hoffmann-LaRoche*, 493 U.S. 170, 110 S.Ct. 486; *Brooks*, 164 F.R.D. at 569; *Tucker v. Labor Leasing, Inc.*, 155 F.R.D. 687, 688-89 (M.D. Fla. 1994) (allowing limited discovery of the names and addresses of current employees of the defendant who were not exempt under the FLSA, and the names and addresses of employees of the defendant who were due overtime compensation but did not receive it).

After the first phase, the defendant may move the court to "decertify" the class. The court then makes a final factual determination of whether the claimants are "similarly situated." If the court finds they are, the action proceeds to trial as a collective action. If not, the court "decertifies" the class, and

_____

procedures for representative or class actions.... Under this section no person can become a party plaintiff to an ADEA action unless that person affirmatively 'opts into' the class by giving written, filed consent."
Brooks v. BellSouth Telecommunications, Inc., 164 F.R.D. 561, 566 (N.D. Ala. 1995) (Blackburn, J.) (footnote omitted).

the "opt in" plaintiffs are dismissed from the action without prejudice, or the case is severed into separate lawsuits. *See, e.g., Brooks*, 164 F.R.D. at 566; *Kaas v. Pratt & Whitmen,* 1991 WL 158943 (S.D. Fla. 1991) (allowing discovery on the merits of the action following the preliminary determination).

As if all of the foregoing difficulties flowing from the fact that these plaintiffs assert gender-based wage disparity claims under <u>both</u> Title VII <u>and</u> the Equal Pay Act amendment to the FLSA were not enough to absorb in one sitting, other, potentially more difficult hurdles loom on the horizon. Among others, the statutes of limitation, the standards of proof, and the damages recoverable are distinctly different under Title VII and the Equal Pay Act. Some of these issues are touched upon in an order entered by this court some years ago in another action in which the plaintiffs also asserted individual (but not class) gender-based wage disparity claims under both employment discrimination statutes. A copy is attached for the edification of counsel.

Even so, it is not the province of this court to dictate to plaintiffs the statutory basis for their claims. Accordingly, separate scheduling orders shall be entered contemporaneously with this memorandum opinion. One order addresses the timetable for discovery related to the merits of the named plaintiffs' individual claims. The other order addresses, on a more abbreviated schedule,

discovery necessary to ascertain whether there may be other persons similarly situated to plaintiffs who should be notified of the pendency of this action, and given the opportunity to affirmatively "opt in" pursuant to FLSA § 216(b).

It should be clearly understood during the period for discovery allowed by such orders that, until such time as this court (i) makes a preliminary determination on the issue of whether there exist other persons similarly situated to plaintiffs, and (ii) conditionally certifies a collective action pursuant to § 216(b), neither plaintiffs nor their attorney should attempt to contact any such individuals, absent court supervision and approval of the form and means of notice.

DONE this ___30th___ day of March, 2001.

United States District Judge

f:\WPDocs\Smith\Judge\Shoulder Sheets\FLSA Mem Op Re Class Discovery

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
NORTHEASTERN DIVISION

| | |
|---|---|
| PEGGY WALKER; and<br>GAYLE GLOVER, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| vs. | )    CIVIL ACTION  No. 95-S-2559-NE<br>) |
| THE CITIZENS BANK OF<br>LAWRENCE COUNTY, | )<br>)<br>) |
| Defendant. | )<br>) |

**ENTERED**

Apr 11 1997

### ORDER

This court has considered the parties' briefs, submitted in compliance with the pretrial order.  In accordance with the principles discussed in (1) the memorandum prepared by one of this court's law clerks (copy attached) and (2) defendant's briefs, all of which are adopted by the court, it is ORDERED that the pretrial order entered March 7, 1997 be, and the same hereby is, amended to incorporate the following rulings:

1.   The issue of a plaintiff's entitlement under the Equal Pay Act to "liquidated damages," in an amount not exceeding that sum awarded by the jury's verdict for gender-based, discriminatory wage "underpayments," is decided by the district court, _not_ the jury.

a.   An employer that is determined by jury verdict to have violated the Equal Pay Act generally _is_ held liable for

liquidated damages, _unless_ "the employer shows to the satisfaction of _the court_ that the act or omission giving rise to such action was in _good faith_[,] _and that_ [it] had _reasonable grounds_ for believing that [its] act or omission was not a violation of the Fair Labor Standards Act of 1938, as amended...." 29 U.S.C. § 260 (emphasis supplied); _see also Joiner v. City of Macon_, 814 F.2d 1537, 1538-39 (11th Cir. 1987).

    **b.** The issue of the employer's "good faith," decided by _the court_ for purposes of determining a plaintiff's entitlement to liquidated damages, is different from the issue of an employer's "willfulness," which is decided by _the jury_ for the purpose of determining whether a plaintiff's entitlement to discriminatory wage "underpayments" is calculated for a period beginning two, or three years prior to suit being filed.

    **2.** Liquidated damages under the Equal Pay Act have a twofold purpose. On one hand, they are designed to _compensate_ "damages too obscure and difficult of proof for estimate other than by liquidated damages." _See Overnight Motor Transportation Company v. Misel,_ 316 U.S. 572, 583-84, 62 S.Ct. 1216, 1222, 86 L.Ed.2d 1682 (1942). On the other hand, they also are intended to _punish_ the employer for its violation of the Act. _See E.E.O.C. v. White_

*and Son Enterprises,* 881 F.2d 1006, 1012-13 (11th Cir. 1989)(noting
that liquidated damage awards under the EPA are "partly punitive"
and "suffice[] as a punishment for [the employer's] conduct").

    **a.**    Therefore, a plaintiff cannot recover <u>both</u>
liquidated damages under the EPA <u>and</u> compensatory-plus-
punitive damages under a gender-based wage discrimination
claim founded on Title VII.

    **b.**    Nevertheless, a plaintiff cannot be required to
"opt" which claim goes to the jury, especially when liquidated
damages under the EPA are determined by the court, and
compensatory-plus-punitive damages under Title VII are decided
by the jury.

    **c.**    Rather, the issue of which should be awarded to a
plaintiff, and which not, in order to prevent duplicative
relief for the same wrong, is decided: (i) <u>after</u> the jury
returns its verdicts; and, (ii) on the basis of which award
will give plaintiff the greatest benefit.

    **3.**    In like manner, the jury shall be presented, and will
decide in the first instance, the issue of a plaintiff's entitle-
ment to "back pay" (*i.e.,* discriminatory wage "underpayments")
under <u>both</u> the EPA <u>and</u> Title VII.  The period during which such
discriminatory wage "underpayments" may be computed varies under
the two statutes.  Moreover, a plaintiff may be able to prove a

violation of Title VII, but not the EPA (or, rarely, *vice-versa*).

      **a.**    Again, however, a plaintiff may <u>not</u> obtain duplicative relief for the same wrong (gender-based wage discrimination), even though the plaintiff may have two statutory vehicles for obtaining relief for such iniquity.

      **b.**    Therefore, the issue of which amount of "back pay" should be awarded to a plaintiff, and which not, shall be decided: (i) <u>after</u> the jury returns its verdicts; and, (ii) in the event the jury finds in favor of a plaintiff under both the EPA and Title VII, on the basis of which award will give that plaintiff the greatest relief for discriminatory wage "underpayments."

      **4.**    Still on the issue of relief for discriminatory wage "underpayments" under either the EPA or Title VII, the general rule that "back pay" damages are calculated through the date of judgment does <u>not</u> apply in a case such as this one, where both plaintiffs ceased employment with defendant prior to trial. A plaintiff may <u>not</u> recover damages beyond the date she last worked for defendant, <u>unless</u> she both alleges and proves the defendant discharged her, either actually or constructively, in retaliation for complaints about unequal pay, or because of some other protected trait or activity. *See Jurgens v. E.E.O.C.*, 903 F.2d 386, 389 (5th Cir. 1990)(Title VII sex-based wage disparity); *Bourque v. Powell Elec.*

Page 4

*Mfg. Co.*, 617 F.2d 61, 65-66 & n.8 (5th Cir. 1980)(same); *Muller v. U.S. Steel Corp.*, 509 F.2d 923, 930 (10th Cir. 1975)(same).

      a.   If a former employee-plaintiff proves that she was discharged by defendant in retaliation for grievances about unequal pay, or because of some other protected trait or activity, then back pay damages for "wages ... lost by reason of the discharge, calculated at the higher, 'nondiscriminatory' rate, less interim earnings," may be separately recovered for the period between the date of her discharge and the date of judgment, but only in the context of (and upon proof of) a retaliatory discharge claim based upon either 29 U.S.C. § 215(a)(3) or Title VII. *See E.E.O.C. v. White and Son Enterprises*, 881 F.2d 1006, 1012 (11th Cir. 1989).

      5.   Neither compensatory nor punitive damages are recoverable by a plaintiff who alleges a claim of retaliatory discharge based upon 29 U.S.C. § 215(a)(3), as opposed to Title VII. Rather, such a plaintiff is limited to the recovery of:

      a.   (*when that plaintiff proves gender-based wage discrimination under either the EPA or Title VII, or both*) back pay damages for "wages ... lost by reason of the discharge, calculated at the higher, 'nondiscriminatory' rate, less interim earnings," and for the period between the date of discharge and the date of judgment (see ¶4.b above); or,

**b.**   (*when the plaintiff proves only her retaliatory discharge claim, but not gender-based wage discrimination under either EPA or Title VII*) back pay damages from the date of discharge through the date of judgment <u>calculated at the rate of pay she was receiving on the date of her discharge</u>, less interim earnings; **and,**

**c.**   "liquidated damages" in an amount equal to such "back pay" award, determined in accordance with the principles discussed in paragraph 1 above.

**DONE** this 11th day of April, 1997.

_____
United States District Judge

TO:       Judge Smith

FROM:     Matt Minner

DATE:     April 7, 1997

RE:       *Peggy Walker and Gayle Glover v. Citizens Bank*
          CV 95-S-2559-NE

### MEMORANDUM

Pursuant to this court's March 7, 1997 pretrial order, the parties submitted brief's on the following issues: (1) whether liquidated damages under the Equal Pay Act ("EPA") and "compensatory plus punitive damages" under Title VII are duplicative; and (2) whether Peggy Walker may recover compensatory and punitive damages under an EPA retaliatory discharge claim, based upon 29 U.S.C. §215(a)(3).

### I. DISCUSSION

**A.    Whether Liquidated Damages Under the Equal Pay Act and Compensatory/Punitive Damages Under Title VII are Duplicative?**

A successful EPA plaintiff may be entitled to liquidated damages in an amount equal to that sum recovered for underpayment. 29 U.S.C. § 216(c).  A plaintiff's right to liquidated damages is not absolute, however.  A court may, in its discretion, deny liquidated damages, in whole or in part, if the employer "shows to the satisfaction of the court that the act or omission giving rise to such action was in good faith and that he had reasonable grounds for believing that ... [the] act or omission" did not violate the EPA.  29 U.S.C. § 260; see also Joiner v. City of Macon, 814 F.2d 1537, 1538-39 (11th Cir. 1987)(an employer who violates the EPA is liable for liquidated damages unless it can prove that its violation was in good faith and based upon reasonable grounds).

It should be noted that an employer cannot avoid liquidated damages under the EPA simply by showing its violation was not "willful." *See* 1 B. Lindemann and P. Grossman, *Employment Discrimination Law* 524 (3d ed. 1996). The concepts of "willfulness" and "good faith" are consistently confused.

> [U]nlike the ADEA, an employer cannot avoid liquidated damages under the EPA just because its violation was not "willful." Although an ADEA determination of willfulness serves both as the basis for an award of liquidated damages and as grounds to extend the limitation period, the EPA refers to "willful" violations only in connection with the statute of limitations. Consequently, a liquidated damages award is an appropriate remedy for an EPA violation unless the employer proves that it acted in good faith and with reasonable grounds to believe that it was complying with the EPA.

*Id.* (footnotes omitted).

In addition to back pay, Title VII of the Civil Rights Act of 1964, as amended by the Civil Rights Act of 1991, 42 U.S.C. §§ 2000e *et seq.,* provides for compensatory and punitive damage awards for intentional violations. 42 U.S.C. § 1981a establishes a cap of $50,000 for compensatory and punitive damages combined for "a [defendant] who has more than 14 and fewer than 101 employees in each of 20 or more calendar weeks in the current or preceding calendar year." 42 U.S.C. § 1981a (b)(3)(A). That cap only covers relief awarded in addition to relief awarded under § 706(g) [42 U.S.C. § 2000e-5(g)] of Title VII. 42 U.S.C. § 1981a(a)(1). Section 706(g) includes back pay and prejudgment interest. 42 U.S.C. § 2000e-5(g).

"Plaintiffs allege those remedies should be considered cumulatively to give each plaintiff the highest possible benefits

2

allowable under the statutes and to vindicate the public's interest in ensuring that the workplace is free of unlawful gender-based discrimination." (Plaintiffs' Memorandum of Law on Damages, at 2.) There cannot be double recovery for the same loss, even though different theories of liability are alleged in the complaint.  22 Am.Jur.2d *Damages* § 35.  Although a plaintiff may not obtain duplicative relief under both the EPA and Title VII for the same wrong, "the amount of recovery under one statute <u>that is above the recovery allowed by the other statute</u> would not be considered double recovery."  [Transfer Binder 1995-1996] L. Larson, *Employment Discrimination*, § T51C.21, at T-991 (2d ed. Temporary Transfer Binder 1996)(emphasis added).  Recovery under both the EPA and Title VII is addressed in 29 C.F.R. § 1620.27(b).

> Recovery for the same period of time may be had under both the EPA and title VII so long as the same individual does not receive duplicative relief for the same wrong. Relief is computed to give each individual the highest benefit which entitlement under either statute would provide (*e.g.*, liquidated damages may be available under the EPA but not under title VII.)  Relief for the same individual may be computed under one statute for one or more periods of the violation and under the other statute for other periods of the violation.

Liquidated damages under the EPA and punitive damages under Title VII are duplicative.[1]  The damages under each statute arise from the same alleged wrong: the disparity in pay between male and female employees of Citizens Bank.  In addition, it is generally held that liquidated damages are punitive in nature and, as with

---

[1]Substantial research has revealed no case law addressing whether liquidated damages under the EPA and punitive damages under Title VII are duplicative for the same wrong.

punitive damages, do not serve to a compensate plaintiff for unlawful discrimination. *See Trans World Airlines v. Thurston*, 469 U.S. 111, 105 S.Ct. 613, 83 L.Ed.2d 523 (1985)(Congress intended for liquidated damages to be punitive in nature); *see also Commissioner of Internal Revenue v. Schleier*, 115 S.Ct. 2159, 2165, 132 L.Ed.2d 294 (1995)(same).

Even so, any relief afforded Peggy Walker and Gayle Glover must be computed to give each individual the highest benefit which entitlement under either statute would provide. 29 C.F.R. § 1620.27(b). According to plaintiffs' counsel, the highest amount of liquidated damages awardable to Peggy Walker under the EPA is $32,619.05; and the highest amount awardable to Gayle Glover under the same Act is $25,802.48. (Plaintiffs' Memorandum of Law on Damages Issues, at 4.) As noted, those damages are awarded at the discretion of this court. Further, the maximum amount of compensatory plus punitive damages available to each plaintiff under Title VII is $50,000. This court cannot presently determine whether either plaintiff will recover under either the EPA, or Title VII, neither, or both. Further, it cannot be determined whether the maximum recovery will be awarded under either statute. Moreover, it is incumbent on this court to ensure that each plaintiff is accorded the "highest benefit which entitlement under either statute would provide." Therefore, a determination of which remedy is appropriate should be reserved until after trial to ensure plaintiffs the "highest benefit." At the current stage of

4

proceedings, plaintiffs should be permitted to pursue damages under each statute.

**B.    Whether Peggy Walker May Recover Compensatory and Punitive Damages on Her Retaliatory Discharge Claim?**

Peggy Walker's claim of retaliatory discharge under the EPA is based upon 29 U.S.C. § 215(a)(3), which provides that "it shall be unlawful for any person  ...  to discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this chapter...."

Plaintiff relies on *Travis v. Gary Community Health Center, Inc*, 921 F.2d 108 (7th Cir. 1990), for the proposition that § 216(b) authorizes the recovery of compensatory and punitive damages for retaliatory discharge in violation of § 215(a)(3).    Section 216(b) provides, in pertinent part:

> Any employer who violates the provisions of section 215(a)(3) of this title shall be liable for such legal or equitable relief as may be appropriate to effectuate the purposes of section 215(a)(3) of this title, including without limitation employment, reinstatement, promotion, and the payment of wages lost and an additional equal amount as liquidated damages.

29 U.S.C. § 216(b).   In *Travis*, Judge Easterbrook wrote that "this amendment authorizes 'legal' relief, a term commonly understood to include compensatory and punitive damages."   *Travis*, 921 F.2d at 111.    Further, the court "could not find any case interpreting [the] amendment" and "the legislative history [was] unhelpful." *Id.*, 728 F.2d at 111-112.    Judge Easterbrook noted that compensation for emotional distress and punitive damages are

5

appropriate for intentional torts, such as retaliatory discharge. Thus, the court concluded that the language of § 216(b) allowing appropriate legal relief was intended to include compensatory and punitive damages. *Id.*, 728 F.2d at 111.

On the other hand, a court within the Eleventh Circuit held that compensatory and punitive damages are not available under the Fair Labor Standards Act ("FLSA").[2]   *Bolick v. Brevard County Sheriff's Department*, 937 F. Supp. 1560, 1566 (M.D. Fla. 1996); *see also Tombrello v. USX Corp.*, 763 F. Supp. 541, 546 (N.D. Ala. 1991)(plaintiff not entitled to punitive damages under 29 U.S.C. § 216(b)). The court relied on the opinion of Judge Seybourn Lynne, writing for the former Fifth Circuit, in *Dean v. American Security Insurance Co.*, 559 F.2d 1036, 1040 (5th Cir. 1977),[3] which it summarized as follows:

> In *Dean*, the plaintiff argued that the phrases authorizing "legal or equitable relief ... without limitation" must be construed to sanction all traditional legal relief, including the award of punitive and general damages.   ...   The Fifth Circuit disagreed that, by itself, the inclusion of the term "legal relief" justified awards of all forms of legal relief.   ...   If Congress believed punitive damages necessary, it knew exactly how to provide for them.

*Bolick*, 937 F. Supp. at 1567 (citations omitted).   The court concluded that the "*Travis* court's reasoning for its decision that emotional and punitive damages are recoverable under § 215(a)(3) is

---

[2]The FLSA incorporates the enforcement provision, 29 U.S.C. § 216(b), of the Equal Pay Act.

[3]In Bonner v. City of Prichard, 661 F.2d 1206, 1209 (11th Cir. 1981), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit handed down prior to October 1, 1981.

6

at odds with this Circuit's reasoning that such damages are not available under the ADEA, which incorporates enforcement provisions similar to the FLSA." *Bolick*, 937 F. Supp. at 1567.

Plaintiff here, as did the plaintiff in *Dean*, argues that the phrase "legal relief ... without limitation" found in § 216(b) was intended to allow for punitive damages. This court is not persuaded by plaintiff's contention, or by the reasoning of the Seventh Circuit in *Travis*, however. Instead, in accordance with the reasoning of the former Fifth Circuit and the Middle District of Florida, this court agrees that if Congress believed punitive damages necessary to eliminate retaliation, it knew precisely how to provide for them. For example, in 42 U.S.C. § 1981a(a)(1) Congress explicitly provided for punitive damages: "[i]n an action brought by a complaining party ... against a respondent who engaged in unlawful intentional discrimination ... the complaining party may recover compensatory and punitive damages...." In contrast, the enforcement provisions of the FLSA are silent as to compensatory or punitive damages. This court concludes that the omission of any reference thereto was intentional. In addition, the liquidated damages allowable under § 216(b) suffices as punishment for defendant's conduct. *See EEOC v. White and Son Enterprises*, 881 F.2d 1006, 1012-13 (11th Cir. 1989)(doubling the amount of underpayment pushes damages beyond the sphere of compensation, and suffices as a punishment for the employer's conduct). Therefore, punitive damages are not an available remedy for a claim of retaliatory discharge under the EPA.

7